**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS ALTAGRACIA,<br><br>    Plaintiff,<br><br>  v.<br><br>SCPO A. VIOLA, et al.,<br><br>    Defendants. | Civil Action No. 21-13017 (KMW) (EAP)<br><br>**OPINION** |

**WILLIAMS**, District Judge:

  This matter comes before the Court on Defendants' Motions seeking Summary Judgment in this prisoner civil rights matter. (ECF No. 38.) Plaintiff filed a response to the motion (ECF No. 43), to which Defendants replied. (ECF No. 44.) Also before the Court is Defendants' motion to seal portions of the summary judgment record. (ECF Nos. 39-40.) Having reviewed the motion to seal and having found that the documents in question, including Plaintiff's medical records, warrant sealing, Defendants' motion to seal (ECF Nos. 39-40) is granted. For the following reasons, Defendants' motion seeking summary judgment is granted in part and denied in part.

### I.  BACKGROUND

  Plaintiff's claims in this matter arise out of an incident which occurred during dinner service in the unit in which Plaintiff was detained in Bayside State Prison on March 30, 2020. (*See* ECF No. 39-2.) The parties generally agree, and video evidence appears to confirm, the basic incidents which led up to the event which is the subject of this matter. At approximately 4:30 p.m.,

following the completion of dinner service, Plaintiff was late in returning a dinner tray to staff. (*Id.* at 1-2.) After an initial attempt to abandon the tray for staff to retrieve, Plaintiff was ordered to wait and then return the tray. (*Id.*) Upon doing so, Plaintiff was instructed by Defendant Viola to place the tray in the proper location and then sit in the unit's dayroom for an on the spot disciplinary punishment. (*Id.*)

The parties dispute the fine details of what occurred next, but the evidence indicates that Plaintiff returned the tray as directed, attempted to return to his cell, was given a command by Viola, who pointed him toward the dayroom, and then turned toward Viola. (*Id.* at 3.) Viola then tackled Plaintiff to the ground. (*Id.*) Viola then began to attempt to restrain Plaintiff's arms, using closed fist strikes to attempt to gain control of Plaintiff. (*Id.*) Defendants Gross and Adones, who were in the unit, attempt to help gain control of Plaintiff, also delivering closed fist strikes. (*Id.*) Further staff thereafter arrive, Plaintiff is restrained, and then escorted to a medical unit for evaluation. (*Id.*) Medical records indicate that Plaintiff had a cut near his left eye, with bruising and swelling to his face indicative of having been struck. (ECF No. 39-1 at 7-8.) Plaintiff was taken to the infirmary at Southern State Correctional Facility, where his wounds were treated. (*Id.* at 3-5.) Plaintiff was also sent to the emergency room for stitches. (ECF No. 39-2 at 4.)

Although these basic background facts are largely undisputed, the exact nature of the triggering of the incident is. According to Plaintiff at his deposition, the officers involved had made several snide and racist comments to him prior to the returning of the tray. (ECF No. 38-18 at 4.) Plaintiff asserts that he attempted to ignore these comments, but was suddenly tackled to the ground and beaten by the three officers without provocation on his part other than asking officer Viola why he was being directed to perform punitive cleaning. (*Id.* at 4-8.) Plaintiff denies making any threats or threatening actions toward Viola, and denies resisting when the three officers sought to restrain him. (*Id.*) According to Plaintiff, the three officers hit him repeatedly for between

2

fifteen and thirty seconds before a response team arrived and took him to medical. (*Id.* at 8-9.) Although Plaintiff acknowledges that he was charged with and found guilty of disciplinary infractions including threatening an officer, attempted assault on an officer, and failure to comply with orders, resulting in the loss of commutation credits and other disciplinary punishments, he alleges that those charges are "bogus." (*Id.* at 11.)

The three officers directly involved in the incident place an entirely different spin on events. According to Officer Viola, after depositing his tray and being ordered to have a seat for further instruction, Plaintiff said "I'm going to knock you out" to Viola and turned toward him aggressively, resulting in Viola tackling him to the ground to prevent an attack upon Viola. (ECF No. 39-2 at 7-8.) Specifically, Viola reported that when Plaintiff turned towards him, he had a raised elbow which Viola believed was the preface to an attack, requiring an immediate response. (*Id.*) Viola admitted to using closed fist strikes to gain control of Plaintiff, but reported that doing so was merely a means to secure Plaintiff's compliance so that he could be handcuffed, as Plaintiff kept his arms under his body to avoid that outcome and refused to respond to orders to provide his hands. (*Id.*)

Officers Adones and Gross gave similar accounts. Adones reported that Plaintiff appeared agitated when returning his tray, that Plaintiff turned upon Viola after being ordered to sit in the dayroom, and that Adones aided in securing Plaintiff after Viola tackled him to the ground. (*Id.* at 5.) Although Adones did not overhear the direct threat asserted by Viola, he did report seeing Plaintiff turn in a confrontational manner, and agreed that Plaintiff resisted being handcuffed, resulting in the use of closed fist strikes to the body to attempt to gain compliance. (*Id.*) Gross, similarly reported witnessing Plaintiff turning towards Viola, though he reported hearing the verbal threat to "knock out" Viola prior to the tackle. (*Id.* at 6-7. Gross confirmed repeatedly ordering Plaintiff to give officer's his hands after the tackle, and in punching Plaintiff to gain control over

3

his hands when Plaintiff refused. (*Id.*) The final Defendant, Defendant Pepper, who was the supervisor of the three involved officers who appears to be part of this matter only insomuch as he did not intervene to end the incident at an earlier point, testified that he did not recall the incident well, and did not recollect whether or not he arrived during the confrontation such that he could have intervened. (*See* ECF No. 38-22 at 6.)

## II. LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the

4

non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial."

*Serodio*, 27 F. Supp. 3d at 550.

### III.   DISCUSSION

#### A.   The *Heck* Bar

In their motion, Defendants first contend that Plaintiff's claims are barred by the *Heck* doctrine. *See Heck v. Humphries*, 512 U.S. 477, 486-87 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 482, 489 (1973). Under this doctrine, a federal civil rights action "will not lie when a state prisoner challenges the fact or duration of his confinement," nor may such a prisoner use a civil rights claim to seek either his "immediate release" or a "shortening" of his term of confinement. *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005). The *Heck* doctrine goes one step further, however, and also bars any civil rights claim for money damages where the success of that claim would impugn the validity of a prisoner's conviction, sentence, or the duration of that sentence. *Id.* Thus, absent the prior invalidation of a prisoner's conviction, sentence, or disciplinary proceeding affecting the length of a prisoner's sentence, a state prisoner's civil rights suit "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of [his] confinement or its duration." *Id.* at 81-82.

5

In this matter, Plaintiff raises claims pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act[1] for excessive force in violation of the Eighth Amendment, failure to intervene in violation of the Eighth Amendment, the pressing of false disciplinary charges, and civil conspiracy to file false disciplinary charges. Defendants argue that these claims are barred by *Heck* because success on the claims would undermine and impugn the validity of prison disciplinary proceedings which resulted in Plaintiff's loss of commutation credits, which in turn extended the length of his sentence. As the outcome of a disciplinary proceeding which results in the loss of commutation credits affects the duration of a prisoner's sentence, a claim which would directly impugn that outcome would in turn imply the invalidity of the length of a prisoner's sentence, and such a claim is therefore barred under *Heck* unless and until the disciplinary proceeding is overturned through state court or habeas proceedings. *Id.* at 80-82; *see also Edwards v. Balisok*, 520 U.S. 641, 643 (1997). Thus, if Plaintiff's current claims *do* imply the invalidity of his disciplinary proceeding, which plaintiff readily admits ended in the loss of commutation credits, that claim would be barred under *Heck*.

Plaintiff's chief claims in this matter involve excessive force and an alleged failure to intervene to end the use of excessive force. The "pivotal inquiry in reviewing an inmate's [Eighth Amendment] claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002)). In

---

[1] Claims brought pursuant to the NJCRA are construed as analogous to their § 1983 federal counterparts, and are therefore analyzed using the legal framework applicable to the analogous § 1983 claim absent clear state law indicating a particular claim is to be analyzed differently. *See, e.g., Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). This Court therefore does not distinguish between Plaintiff's § 1983 and NJCRA claims in this opinion and instead analyzes Plaintiff's claims under the applicable § 1983 standards which are equally applicable to Plaintiff's NJCRA claims.

conducting this evaluation, courts must look to five factors: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." *Id.* (quoting *Smith*, 293 F.3d at 649). Inherent in the nature of this analysis is the clear conclusion that an Eighth Amendment excessive force claim may yet proceed even where the inmate activity which initiated the force required a legitimate physical response, but where officers considerably exceeded the necessary amount of force in mounting their response. *See, e.g., Jacobs v. Bayha*, 616 F. App'x 507, 513-14 (3d Cir. 2015). *Heck* will therefore only bar an excessive force claim raised under the Eighth Amendment where "specific factual allegations in the complaint are necessarily inconsistent with the validity" of the outcome of the prisoner's criminal or disciplinary proceedings. *Id.*; *see also McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006).

The outcome of Plaintiff's prison disciplinary proceedings certainly suggests that the application of force in this matter was initially warranted – i.e., that the officers were responding to verbal threats from Plaintiff, who had acted in an aggressive and assaultive manner in turning towards Officer Viola. The outcome of the proceedings further indicates that Plaintiff was found to have resisted commands to permit himself to be handcuffed. That said, it would be entirely consistent with Plaintiff's disciplinary outcome and loss of credits were a jury to ultimately conclude that, while force was initially warranted, the level of force actually employed so exceeded what was warranted to qualify as malicious or sadistic. Plaintiff's disciplinary outcome is thus not *per se* incompatible with a claim of excessive force related to the punches he received while on the ground. Although Plaintiff maintained his position that his disciplinary charges were false and that he did not in any way instigate or initiate the confrontation resulting in the use of excessive

7

force, he also maintained in his deposition that the nature of the attack itself was excessive – that he was struck numerous times, requiring medical treatment, and to the point that he couldn't have even been sure of how long the attack endured. Because Plaintiff's excessive force claim may yet stand based on the allegedly excessive nature of the response, even assuming that Plaintiff did act aggressively and threaten the officer who tackled him, that claim is not necessarily contrary to the outcome of the disciplinary proceedings, Plaintiff's excessive force claim is not barred by *Heck*.

Notwithstanding that excessive force claim itself may not be fully *Heck* barred, Defendants contend that Plaintiff should be precluded from asserting at trial facts contrary to the disciplinary proceeding outcome, such as Plaintiff's denial that he threatened the officers or claim that he did not resist or act aggressively, based on the *Heck* rationale. The *Heck* doctrine, however, has never clearly been held to provide a basis for issue preclusion by the Supreme Court or Court of Appeals, *see, e.g., Ruiz v. N.J. Dep't of Corr.*, No. , 2020 WL 2111013, at *6 (D.N.J. May 1, 2020) (citing *Simpson v. Thomas*, 528 F.3d 685, 694 (9th Cir. 2008)). *Heck*, then, does not provide the basis for issue preclusion that Defendants assert, and the request for issue preclusion based on *Heck* is denied at this time.[2]

---

[2] Although *Heck* provides no basis for issue preclusion, binding authority does provide that even unreviewed state administrative proceedings "should be given preclusive effect in subsequent section 1983 actions." *Roth v. Koppers Indus., Inc.*, 993 F2d. 1058, 1061 (3d Cir. 1993). Thus, "when a state agency acting in a judicial capacity . . . resolves disputed factual issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect it would be entitled to in the State's courts." *Id.* at 1062 n. 3 (quoting *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)). As New Jersey accords preclusive effects to quasi-judicial administrative proceedings so long as they have significant procedural and substantive safeguards, *see Winters v. N. Hudson Reg. Fire & Rescue*, 212 N.J. 67, 87 (2012), and New Jersey provides considerable protections in prison administrative proceedings, *see Avant v. Clifford*, 67 N.J. 496 (1975), it may well be the case that general issue preclusion or collateral estoppel principles may provide a basis to estop or preclude Plaintiff from disputing his behavior prior to the attack at any trial in this matter. As the parties have not actually litigated the more general preclusion issue, however, this Court need not address it at this time. To the extent Defendants believe that issue preclusion or collateral estoppel principles in general warrant this Court precluding Plaintiff from testifying that he did not threaten

8

Plaintiff's failure to intervene claim does not directly conflict with the outcome of Plaintiff's disciplinary proceeding. In order to assert a claim for failure to intervene, a plaintiff must show that the Defendant was aware of a use of excessive or unprovoked force against the Plaintiff, had a realistic opportunity to intervene to end that use of improper force, and either failed or refused to do so. *Smith*, 293 F.3d at 650-51. In his failure to intervene claim, Plaintiff essentially asserts that Defendants witnessed the attack on his person, and rather than stopping it, joined in to assault him. Such a claim is consistent with both an initial unprovoked assault – which may be factually contrary to the disciplinary proceedings – or an excessive but provoked attack – which is not inconsistent with the outcome of Plaintiff's disciplinary proceedings. Because this claim is not necessarily contrary to the outcome of the proceedings, it is not barred by *Heck*.

In his final two claims, Plaintiff asserts that Defendants exposed him to unconstitutional punishment in filing false disciplinary charges against him,[3] and in conspiring to do so. The filing of a false disciplinary charge alone does not violate a prisoner's civil rights – it is only where there is a resulting Due Process violation in proceedings on the allegedly false charge that will give rise to a constitutional claim. *See, e.g., Smith*, 293 F.3d at 653-54. Thus, to make out a claim on the basis of false charges resulting in a sham disciplinary proceeding, Plaintiff would have to show that he suffered disciplinary infractions resulting in a loss of a liberty interest – such as the good time credits he lost – and that he was denied of some required process in the hearing itself. . *See,*

---

the officers or did not act aggressively towards them, they may raise that issue via a motion *in limine* prior to trial.

[3] In the "First Count" of Plaintiff's complaint, which is asserted as an Eighth Amendment violation, Plaintiff asserts both allegations related to the alleged excessive force and to the filing of false disciplinary charges. (*See* ECF No. 1 at 2.) Plaintiff also raises the excessive force claim in a separate count of his complaint, unhelpfully also labeled "First Count," although it is the fourth count of the complaint. (ECF No. 1 at 5.) This Court thus addresses the false disciplinary charge claim separately from the excessive force to the extent it was intended to stand alone as a separate basis for relief.

*e.g., Sandin v. Connor*, 515 U.S. 472, 486 (1995); *Deavers v. Santiago*, 243 F. App'x 719, 721 (3d Cir. 2007); *see also Stevenson v. Carroll*, 495 F.3d 62, 70 (2007). Thus, for Plaintiff's false disciplinary charge claims to have merit, he would have to directly show a fault in his resulting disciplinary proceeding sufficient to render that proceeding unlawful. Plaintiff's false disciplinary charge claims are thus directly contradictory of his disciplinary proceedings, and thus, to the extent they have merit,[4] are certainly barred by the *Heck* doctrine. Plaintiff's false charge and conspiracy to file false charge claims must therefore be dismissed at this time.

## B. Qualified Immunity

In their remaining arguments, Defendants contend that they are entitled to qualified immunity as to Plaintiff's excessive force and failure to intervene claims as Plaintiff has failed to make out either claim, and no clearly established law indicates that it is unlawful for an officer to respond to threatening words or body language by tackling and restraining a prisoner. "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

---

[4] In his complaint and deposition, Plaintiff focused solely on the alleged falsity of the charges, and did not provide any clear evidence of a Due Process deprivation at his disciplinary proceedings. It thus appears that Plaintiff's false charge claims may ultimately be without merit in any event. Likewise, Plaintiff has provided essentially no evidence of a conspiracy in this matter other than mere parallel actions and his own assumptions. As Plaintiff has provided no evidence of agreement on the part of Defendants, Plaintiff has not established a conspiracy. *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008); *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) ("the bare allegation of an agreement is insufficient to sustain a conspiracy claim"); *Desposito v. New Jersey*, No. 14-1641, 2015 WL 2131073, at *14 (D.N.J. May 5, 2015) (showing that two parties' actions had the same result insufficient to show conspiracy, conspiracy requires showing of actual agreement and concerted action). Plaintiff's false charge and conspiracy claims are thus deficient and must be dismissed in any event, even were they not barred by *Heck*.

(1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011)). In determining whether immunity applies, courts use a two pronged test: "a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendants alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

For a claim to be clearly established, "existing precedent [must have] placed the . . . constitutional [right in] question *beyond debate*." *Id.* at 638. With the exception of cases involving "obvious violations" of prior Supreme Court rulings, a plaintiff's claim will only be "clearly established" where "the violative nature of the *particular* conduct [was] clearly established." *James v. New Jersey State Pol.*, 957 F.3d 165, 169 (3d Cir. 2020). The conduct in question must therefore be defined at an "appropriate level of specificity," *Spady*, 800 F.3d at 638, and, when so defined, the plaintiff must identify "a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional provision in question. *James*, 957 F.3d at 169-70. For the purposes of this analysis, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals" in effect at the time of the conduct in question. *Id.* at 170.

Defendants first contend that Plaintiff has failed to provide sufficient evidence to make out a claim of excessive force, and that this failure requires the dismissal of both his excessive force claim and his failure to intervene claim which is dependent upon the existence of an excessive force incident to proceed. Defendants' argument, however, is entirely dependent on the theory that for Plaintiff's excessive force claim to proceed, it must be the case that Plaintiff did not initiate the confrontation through threats or assaultive behavior. However, as this Court explained above,

11

Case 1:21-cv-13017-KMW-EAP   Document 45   Filed 12/05/22   Page 12 of 13 PageID: 489

although Plaintiff decries his innocence of any threat, his claim of excessive force is not solely dependent upon his innocence – it may also proceed based on the theory, presented in Plaintiff's testimony, that officers continued to beat him for a considerable period and beyond the point of necessity. Because a jury who credited this testimony after viewing the video evidence could potentially find that the officer's continued punches so exceeded what was called for to respond to Plaintiff's behavior could amount to a willful and wanton use of force, a genuine issue of material fact remains as to whether the force employed was merely used as a good faith response to Plaintiff's behavior and resistance, or was considerably in excess of that required for such a good faith response. *See Ricks*, 891 F.3d at 480. Therefore, because there remains general material issues of fact as to whether the force employed was unlawfully excessive, this Court cannot find that Defendants are entitled to judgment based on a failure to present a colorable claim of excessive force.

Next, Defendants contend that no clearly established caselaw provides that an officer may not respond to verbal threats or threatening behavior with force including a tackle, and the force necessary to restrain and handcuff the prisoner. However, even assuming that to be the case, that argument is again reliant on Defendants' characterization of Plaintiff's claims as solely and entirely dependent upon a lack of an initial basis for a use of force, rather than the force, at first reasonably applied, becoming excessive in amount as the encounter between Plaintiff and Defendants continued. As it has been clearly established that an application of force after an officer has successfully subdued an inmate is contrary to the Eighth Amendment, *see, e.g., Jacobs v. Cumberland County*, 8 F.4th 187, 197 (3d Cir. 2021), and as there is a genuine issue of material fact in this case of whether Plaintiff ceased resisting and was thus essentially subdued before the officers' punches concluded in this case, Defendants are not clearly entitled to qualified immunity at this time. *Id.*

12

Finally, Defendants contend that Defendant Pepper should be entitled to judgment in this matter because he testified at his deposition to not recalling being involved in the incident or having an opportunity to intervene to end the incident. Plaintiff responds by asserting that Defendant Pepper is one of the individuals seen in the video, a point which Defendants don't so much deny as decry as unsupported by direct testimony from Plaintiff. Whether Pepper is, in fact, the person involved in the video is a determination for a jury to make, and Plaintiff may well identify him as such in actual live testimony rather than a deposition conducted by Defendants' attorneys who did not request Plaintiff to make an identifications from the video. Likewise, that Pepper didn't recall any direct involvement does not unequivocally remove him from the situation, and it is for the jury, and not this Court reviewing a summary judgment motion, to decide whether to credit Plaintiff's version of events or Defendant's. Defendants have thus failed to show that there is no genuine issue of material fact for trial as to Pepper's presence or lack thereof, and summary judgment cannot be granted on that basis.

## IV.   CONCLUSION

In conclusion, Defendants' motion to seal (ECF Nos. 39-40) is granted, and Defendants' Motion for Summary Judgment (ECF No. 38) is granted in part and denied in part. An appropriate order follows.

Hon. Karen M. Williams,
United States District Judge